### The McCARTY CORPORATION
### v.
### The UNITED STATES.
### No. 282–72.

United States Court of Claims.
June 19, 1974.

---

634

William D. Bryce, Austin, Tex., attorney of record, for plaintiff.

Thomas W. Petersen, Washington, D. C., with whom was Asst. Atty. Gen. Carla A. Hills, for defendant.

Before COWEN, Chief Judge, and SKELTON and KUNZIG, Judges.

## OPINION

### PER CURIAM:

This case comes before the court on defendant's exceptions to the recommended decision filed by Senior Trial Judge Mastin G. White on September 21, 1973 pursuant to Rule 134(h). The court has considered the case on the briefs and oral argument of counsel. Since the court agrees with the decision, as hereinafter set forth,* it hereby affirms and adopts the same as the basis for its judgment in this case. Therefore, it is concluded that plaintiff is entitled to recover and judgment is entered that plaintiff recover of and from the United States the sum of four thousand two hundred dollars ($4,200).

### OPINION OF TRIAL JUDGE

WHITE, Senior Trial Judge: The petition in this case alleges that the defendant (acting through the Corps of Engineers, U.S. Army) wrongfully awarded to a third party, Morris Plumbing Company, Inc., a contract for the performance of certain construction work and the air-conditioning of 32 existing dormitories for airmen at Sheppard Air Force Base, Texas; that the contract should have been awarded to the plaintiff; and that the plaintiff sustained damages as a result of the defendant's wrongful action.

Bids on the work referred to in the preceding paragraph were solicited in an invitation for bids ("IFB") which the Fort Worth District of the Corps of Engineers issued on January 21, 1971. The IFB called for itemized bids on three separate items of work and for a total bid; and prospective bidders were informed that they must bid on all three items. Item 1 was described in the IFB as "Central Chilling Plant Building, complete"; item 2 was described as "Air Conditioning for 32 existing buildings"; and item 3 was described as "Grading, Paving, Sidewalks, Utilities, Establishment of Turf, and all other work not separately listed."

The plaintiff was one of 11 companies that submitted bids in response to the IFB. Prior to the submission of the plaintiff's bid, the plaintiff's president, W. H. McCarty, instructed a subordinate, Luther J. Martin, to prepare the bid on behalf of the plaintiff by entering on the bid form the figure $140,000 for item 1, the figure $434,000 for item 2, the figure $100,000 for item 3, and the figure $674,000 for the total of the bid. However, Mr. Martin made the mistake of transposing two of the digits in the amount of the bid on item 2, with the result that the figure actually entered on the bid form for item 2 was $443,000 rather than $434,000. All the other figures which Mr. Martin entered on the bid form were in accordance with Mr. McCarty's instructions, including $674,000 as the total of the bid. (Because of the mistake in connection with the bid on item 2, the arithmetical sum of the dollar amounts entered by Mr. Martin on the bid form for items 1, 2, and 3 was $683,000, rather than the $674,000 shown on the form as the bid total.)

Another bidder that responded to the IFB was Morris Plumbing Company, Inc. ("Morris"). Morris' bid (as amended by a telegram prior to the bid opening) quoted $155,000 for item 1, $389,000 for item 2, $137,000 for item 3, and $690,000 for the total of the bid. (The arithmetical sum of the dollar amounts stated by Morris on its bid, as amended, for items 1, 2, and 3 was $681,000 and not the $690,000 quoted as the bid total.)

The bid opening took place on March 15, 1971, at the headquarters office of the Fort Worth District. At the bid opening, an official of the Fort Worth District opened each of the bids and read the amount listed as the total, and another official then recorded the same amount. The amount of $674,000 shown on the plaintiff's bid as the total of that bid was the lowest of the totals listed on the several bids submitted in response to

---

* Whereas the court adopts the trial judge's separate findings of fact, which are set forth in his report filed September 21, 1973, they are not printed herein since such facts as are necessary to the decision are contained in his opinion.

the IFB. After all the bids had been opened and read, it was announced orally that the plaintiff was the "apparent low bidder"; and the Fort Worth District then issued a written "memorandum of understanding" to the plaintiff, showing the plaintiff as the "apparent low bidder."

Soon after the bid opening, personnel of the Forth Worth District began a review of the bids in order to determine whether there were any deficiencies in the bids, and also to determine, as to each bid, whether the sum of the amounts quoted for the three items comprising the bid was correctly reflected in the amount quoted by the bidder as the total of the bid. During the review of the bids, it was discovered that the three amounts that were entered on the plaintiff's bid form for items 1, 2, and 3 totaled $683,000, rather than the $674,000 that had been entered on the form as the bid total. It was also discovered that the three amounts quoted on Morris' bid, as amended, for items 1, 2, and 3 totaled $681,000, rather than the $690,000 indicated as the total of Morris' amended bid.

After the discovery of the discrepancies mentioned in the preceding paragraph, personnel of the Fort Worth District purported to correct Morris' bid and the plaintiff's bid by indicating with a pen on the bids that Morris' bid total was $681,000 and the plaintiff's bid total was $683,000. Both the plaintiff and Morris were informed by the Fort Worth District that since the amounts of the three items comprising Morris' bid totaled $681,000, while the amounts of the three items comprising the plaintiff's bid totaled $683,000, it was Morris, and not the plaintiff, that had submitted the low bid. A controversy over the matter ensued, with the plaintiff and Morris contending before the Corps of Engineers for the award of the contract, and with the plaintiff requesting permission to correct its bid so as to show $434,000 as the amount quoted for item 2.

During the course of the administrative proceedings, the plaintiff submitted to the Corps of Engineers both oral and written representations establishing that it had been the plaintiff's intention to bid $434,000 on item 2 and to bid a total of $674,000 on all three items of the IFB, and that the insertion on the bid form of $443,000, instead of $434,000, for item 2 was due to an error on the part of the plaintiff's employee, Luther J. Martin. Morris also submitted a letter stating that it had intended for the total of its bid to be $681,000 rather than $690,000.

The controversy over the award of the contract was ultimately decided administratively by the General Counsel of the Corps of Engineers, acting for the Chief of Engineers. The General Counsel concluded that the contract should be awarded to Morris, and not to the plaintiff.

Following the administrative determination mentioned in the preceding paragraph, the plaintiff was notified on May 6, 1971, by the Fort Worth District that permission to correct the plaintiff's bid was denied, and that an award of the contract to Morris in the amount of $681,000 was being made that day.

After receiving the notification concerning the administrative decision, the plaintiff sent to the Comptroller General of the United States a telegram dated May 7, 1971, and a letter dated May 11, 1971, protesting the award of the contract to Morris. The Comptroller General's decision on the plaintiff's protest was dated December 21, 1971 (B–172900). The Comptroller General reviewed the evidence that had been presented to him, and then stated the following conclusions:

> Upon review of the evidence before us we must conclude that McCarty's bid price was $674,000, the figure inserted as the total price for the bidding schedule, and that award of the contract should have been made to McCarty, assuming that McCarty was otherwise acceptable as a prospective contractor.
>
> However, since construction work has progressed to a considerable degree and recognizing that the con-

tracting officer cannot be said to have acted unreasonably in the first instance, we do not believe that termination of the contract would be in the best interest of the Government.

The plaintiff thereafter instituted the present action on July 10, 1972.

It appears that the amount ($137,139.-47) claimed by the plaintiff in the petition as damages is based principally upon the loss of anticipated profits which the plaintiff hoped to make on the contract that is involved in the present litigation. Although not articulated expressly in the petition, it has been one of the plaintiff's legal contentions during the judicial proceedings that a contract came into existence between the defendant and the plaintiff as the low bidder, that the defendant breached the contract by wrongfully denying the plaintiff an opportunity to perform it, and that the plaintiff sustained damages, including the loss of anticipated profits, as a result of such breach.

■ The plaintiff's claim for lost profits cannot be sustained. No contract between the defendant and the plaintiff ever came into existence. It is provided in 10 U.S.C. § 2305(c) that the award of a contract by an agency of the Army, Navy, Air Force, Coast Guard, or National Aeronautics and Space Administration "shall be made * * * by giving written notice to the responsible bidder whose bid conforms to the invitation and will be the most advantageous to the United States, price and other factors considered." No written notice of award was ever made to the plaintiff with respect to the contract that is involved in the present case. It is true that, soon after the opening of the bids that had been submitted pursuant to the IFB, the Fort Worth District issued to the plaintiff a written "memorandum of understanding" showing the plaintiff as the "apparent low bidder." However, the "memorandum of understanding" expressly stated that "the Government assumes no responsibility to award contract until after complete analysis has been made of the bid schedules." Fol-

lowing such analysis and the administrative proceedings previously mentioned, the actual written award of the contract was made to Morris, and not to the plaintiff.

Accordingly, it would not be proper to permit the plaintiff to recover for the loss of anticipated profits in the present case, since the contract under which the plaintiff would have made such profits never actually came into existence. Keco Industries, Inc. v. United States, 428 F.2d 1233, 1240, 192 Ct.Cl. 773, 784 (1970).

■ On the other hand, it is an implied condition of every invitation for bids issued by the Government that each bid submitted pursuant to the invitation will be fairly and honestly considered (Heyer Products Co. v. United States, 140 F.Supp. 409, 412, 135 Ct.Cl. 63, 69 (1956)); and if an unsuccessful bidder is able to prove that such obligation was breached and he was put to needless expense in preparing his bid, he is entitled to recover his bid preparation costs in a suit against the Government (Keco Industries, Inc. v. United States, *supra*, 428 F.2d at 1240, 192 Ct.Cl. at 785).

When personnel of the Fort Worth District purported to correct the bid totals on the bids submitted by Morris and the plaintiff, by showing $681,000 as Morris' bid total and $683,000 as the plaintiff's bid total, such personnel presumably was seeking to exercise the authority conferred by 32 CFR § 2.406–2 (1971), which provided in part as follows:

Any clerical mistake apparent on the face of a bid may be corrected by the contracting officer prior to award, if the contracting officer has first obtained from the bidder written or telegraphic verification of the bid actually intended. Examples of such apparent mistakes are: obvious error in placing decimal point; obvious discount errors * * *; obvious reversal of the price f. o. b. destination and the price f. o. b. factory; obvious error in the designation of units. * * *

■ Neither Morris' bid nor the plaintiff's bid, however, contained a "clerical mistake apparent on the face of a bid." What was involved in each of the bids was a discrepancy between (1) the arithmetical sum of the amounts quoted on the three items comprising the bid and (2) the amount quoted as the total of the bid; and it was impossible to determine from the face of the bid whether the bidder had made a mistake in entering one or more of the three amounts for the separate items, on the one hand, or had made a mistake in entering the amount for the bid total, on the other hand. Thus, the present case did not come within the ambit of 32 CFR § 2.406–2; and the Fort Worth District acted without authority in purporting to correct the two bids on its own initiative.

Furthermore, the Fort Worth District did not, as required by 32 CFR § 2.406–2, "first * * * [obtain] from the bidder written or telegraphic verification of the bid actually intended."

A proper bid correction in the present case could have been accomplished only upon the request of a bidder submitted in accordance with 32 CFR § 2.406–3(a)(3) (1971), which provided in part as follows:

(3) Where the bidder request permission to correct a mistake in his bid and clear and convincing evidence establishes both the existence of a mistake and the bid actually intended, a determination permitting the bidder to correct the mistake may be made; *provided that, in the event such correction would result in displacing one or more lower bids, the determination shall not be made unless the existence of the mistake and the bid actually intended are ascertainable substantially from the invitation and the bid itself.* * * * [Emphasis supplied.]

■ It is clear that Morris was not eligible to obtain a correction of its bid under the language quoted in the preceding paragraph, since such correction would have resulted in displacing the plaintiff's lower bid, and "the existence of the mistake and the bid actually intended" were not "ascertainable substantially from the invitation and the bid itself." As previously indicated in this opinion, Morris' bid involved a discrepancy between the arithmetical sum of the amounts quoted on the three items comprising the bid and the amount quoted as the total of the bid; and it was impossible to determine from the face of the bid whether Morris had made a mistake in entering one or more of the three amounts for the separate items or had made a mistake in entering the amount for the bid total.

■ On the other hand, the Corps of Engineers could properly have permitted the plaintiff to correct its bid under 32 CFR § 2.406–3(a)(3), as requested by the plaintiff, since such correction would not have involved any change in the bid total or the displacement of a lower bid.

■ In correcting Morris' bid without authority, and thereby displacing the plaintiff's lower bid, while refusing a proper request from the plaintiff that its low bid be corrected as to one item that did not affect the total, the Corps of Engineers acted in a discriminatory, arbitrary, and capricious manner, and failed to give the plaintiff's bid the fair and honest treatment required by law. *Cf.* Armstrong & Armstrong, Inc. v. United States, 356 F.Supp. 514, 520 (E. D.Wash.1973).

The plaintiff is therefore entitled to reimbursement for its bid preparation costs, which totaled $4,200.

## CONCLUSION OF LAW

Upon the findings of fact and the foregoing opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover, and it is therefore adjudged and ordered that the plaintiff recover of and from the United States the sum of four thousand two hundred dollars ($4,200).