Earl S. KING and R. J. Cherrier, Appellants and Cross-Appellees,

v.

ALASKA STATE HOUSING AUTHORITY, Appellee and Cross-Appellant.

Nos. 5234, 5252.

Supreme Court of Alaska.

Sept. 11, 1981.

---

5. Simon's attorney did not explicitly make such a concession, but his closing argument is notably lacking in force.

George Trefry, Holland & Trefry, Anchorage, for appellants and cross-appellees.

Michael W. Price and Teresa Hogan, Groh, Eggers, Robinson, Price & Johnson, Anchorage, for appellee and cross-appellant.

Before RABINOWITZ, C. J., CONNOR, MATTHEWS and COMPTON, JJ., and HODGES, Superior Court Judge.*

## OPINION

RABINOWITZ, Chief Justice.

This litigation has been before the Alaska court system for more than ten years. It is now on appeal to this court for the third time.

The facts pertinent to the present appeal are not in dispute. In 1964, the Alaska State Housing Authority (hereinafter "ASHA") adopted, and the Anchorage City Council approved, an urban renewal plan for the Eastchester area of Anchorage. Pursuant to this plan, ASHA condemned the land on which the Eastchester project was to be built, part of which was owned by appellants King and Cherrier. One provision of the urban renewal plan was as follows:

*Opportunities for Former Owners to Re-Establish Themselves In the Project Area* Owners of property within the project area whose property is acquired by the Alaska State Housing Authority will be given preferential consideration as redevelopers in the project area, if the Alaska State Housing Authority in its sole discretion determines—all other things being equal—that such owner's proposal for redevelopment is equal to or superior to proposals of other redevelopers.

This provision was promulgated as a regulation by ASHA when it invited proposals for the private redevelopment of part of the Eastchester urban renewal project in December of 1970. Relying on their "repurchase preference rights," appellants submitted a detailed proposal for the project and an estimate of the cost of construction.

Based on a numerical scoring system which evaluated each proposal according to its economic and aesthetic merits and its "relative live ability," ASHA selected the proposal of a competing developer, J. L. Johnston, as "the best project development plan." Notice of this selection was given to the Anchorage City Council, as required by AS 18.55.540(b),[1] and in the course of a regularly scheduled meeting the City Council voted to reject ASHA's selection.

Subsequent to ASHA's selection of Johnston's proposal, but before the City Council considered the matter, King and Cherrier filed suit against ASHA and Johnston. Their complaint alleged various improprieties in ASHA's selection procedure and sought an injunction against acceptance of Johnston's bid by ASHA and a declaratory judgment to the effect that King and Cherrier were entitled to purchase and develop the parcel in issue. The complaint was dismissed and judgment was entered for ASHA on September 30, 1971. Apparently a stay pending appeal was not requested.

On appeal, we rejected several of King and Cherrier's allegations of error, but concluded that by producing evidence that computational errors had resulted in assignment of incorrect numerical ratings to their proposal,[2] King and Cherrier had established a prima facie case on the issue of abuse of administrative discretion by ASHA. *King v. Alaska State Housing Authority*, 512 P.2d 887, 895 (Alaska 1973) ("*King I*"). Accordingly, the superior

* Hodges, Superior Court Judge, sitting by assignment made pursuant to Article IV, section 16 of the Constitution of Alaska.

1. See note 9 *infra*.

2. Appellants claim that their project's "overall planning score" should have been 1200 rather than the 1160 it received. The Johnston proposal received a score of 1430 from ASHA's evaluators. Additionally, appellants argue that their plan was rated as exactly equal to the Johnston plan in the "Yards and Space Between Buildings" category in spite of the fact that their proposal provided for substantially more "green space" and "play area." Finally, and most significantly, appellants assert that the "Economic Feasibility Ratio" of 112% assigned to their proposal would have been 99.35% if correctly computed. ASHA's director testified that "anything above a hundred and ten places [a proposal] outside the realm of feasibility," so that it appears that this purported error effectively disqualified appellants' proposal from consideration. The Johnston proposal was assigned an "Economic Feasibility Ratio" of 99.2 or 99.3%.

court's decision was vacated and the case remanded for completion of the trial proceedings. *Id.* at 896.

During the time the appeal was pending, however, ASHA awarded the contract to Johnston; the property had been conveyed and construction and begun by the time the first appeal was decided. Recognizing that injunctive relief was no longer practicable, King and Cherrier sought and were granted leave to file an amended complaint. This complaint asserted a claim for damages in the amount of $400,000, representing the profit King and Cherrier expected to make had they been awarded the contract. On June 28, 1976, however, ASHA's motion for judgment on the pleadings, which alleged that the superior court was without jurisdiction to consider the issues raised in the amended complaint, was granted. Another appeal to this court followed. In reversing the superior court on the jurisdiction issue, we reiterated that appellants had "established a prima facie case of abuse of discretion." *King v. Alaska State Housing Authority*, 571 P.2d 1010, 1012 (Alaska 1977) ("*King II*"). We added, however, that:

> We do not decide whether a claim for damages may be properly maintained if ASHA is found to have acted negligently or to have abused its discretion, as those questions were not presented.

On remand, ASHA moved for summary judgment on the ground that King and Cherrier's amended complaint did not state a claim for which damages could be award-ed. The present appeal is from the superior court's decision granting ASHA's motion for summary judgment in that action. It is, then, the issue that was expressly reserved in *King II, id.*, that is before us on this appeal. ASHA concedes that, for purposes of this appeal, it must be assumed that the computational errors alleged by King and Cherrier occurred and that those errors were material to ASHA's rejection of their redevelopment proposal.

Appellants now urge several alternative theories under which they claim to be entitled to damages from ASHA. In addition to opposing those theories, ASHA, as cross-appellant, argues that appellants' tort and constitutional claims are barred by the doctrine of sovereign immunity. Appellants also attack the superior court's award of $18,000 in attorney's fees to ASHA.

Appellants' first argument for recovery of damages from ASHA is based on the due process clauses of the United States and Alaska Constitutions.[3] Assuming that the preference rights in issue were property rights within the protection of the Fourteenth Amendment[4] and, further, that ASHA's behavior constituted a deprivation of those rights, appellants assert that the holding of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), provides them with a cause of action based directly on the United States Constitution. Because we cannot agree that *Bivens* is applicable to the facts of this case,

---

**3.** U.S.Const. Amend. V and XIV; Alaska Const. Art. I, § 7.

**4.** Appellants rely on standards developed by the United States Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and a companion case, *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), in arguing that ASHA's policy of preferring prior owners in its consideration of redevelopment proposals constituted, as to them, a property interest which was entitled to procedural due process protection. In *Roth*, the court stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of en-

titlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Roth*, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.

we need not consider the validity of the assumptions upon which this argument is premised.

In holding that Bivens was entitled to recover damages for harm inflicted by federal agents during an unconstitutional search, the Supreme Court said:

> Of course, the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages for the consequences of its violation. But 'it is . . . well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.' The present case involves no special factors counselling hesitation in the absence of affirmative action by Congress.

*Id.* at 396, 91 S.Ct. at 2004, 29 L.Ed.2d at 626 (citation omitted). In a more recent case, *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Supreme Court reaffirmed the principles set forth in *Bivens.* Emphasizing the absence of "alternative forms of judicial relief" and noting that "[f]or Davis as for Bivens, 'it is damages or nothing,' " *id.* at 245, 99 S.Ct. at 2277, 60 L.Ed.2d at 862–63, the Court held that the Fifth Amendment's due process clause provided a cause of action for damages, *id.* at 248–49, 99 S.Ct. at 2278–79, 60 L.Ed.2d at 865.

The most serious obstacle to appellants' argument under *Bivens* and *Davis* is the question of whether this case involves any "special factors counselling hesitation" in creating a damages remedy based on the Constitution. *Bivens,* 403 U.S. at 396, 91 S.Ct. at 2004, 29 L.Ed.2d at 626; *Davis,* 442 U.S. at 245, 99 S.Ct. at 2277, 60 L.Ed.2d at 862. ASHA urges that various public policy considerations compel rejection of appellants' claim. The superior court found that argument persuasive and cited several policy factors that underlie "the generally accepted view [that] a disappointed bidder is not entitled to an award of money damages against a public authority even though his bid was wrongly rejected":

First, to award money damages to a disappointed bidder twice penalizes the public. *Premier Electrical Construction Co. v. Board of Education of the City of Chicago* [70 Ill.App.3d 866, 27 Ill.Dec. 125], 388 N.E.2d 1088, 1094 (Ill.App.1979). When a public contract is not awarded to the lowest bidder, the public must pay the additional expense. If money damages are awarded to the disappointed bidder, the public is again penalized. Second, judicial review of bid selections thwarts the right of a public authority to reject any and all bids and would subject public agencies to endless lawsuits by disappointed bidders. *Universal By-Products v. City of Modesto* [43 Cal.App.3d 145], 117 Cal.Rptr. 525 (Cal.App.1974). Third, the power to let a public contract is exercised for the benefit of the public and not the bidder. *Townsend v. McCall* [262 Ala. 554], 80 So.2d 262 (Ala.1955); *Beaver Glass and Mirror Co., Inc. v. Board of Education* [59 Ill.App.3d 880, 17 Ill.Dec. 378], 376 N.E.2d 377 (Ill.App.1978); *Pioneer Co. v. Hutchinson,* 220 S.E.2d 894 (W.Va.1975).

■ Although appellants distinguish the cases cited by the superior court on the ground that they, and not the public, were the intended beneficiaries of the preference rights on which they rely, we find the superior court's reasoning applicable here. Even granting appellants' contention that the present case is distinguishable from those cited by the superior court, the fact that the urban renewal project undertaken by ASHA was in the public interest, and that recovery by appellants would entail double payment for the project by the public, militates against their position. Furthermore, the distinction between appellants and any other disappointed bidders amounts to nothing more than the right to the award of the contract in the unlikely event of an ASHA decision that the merits of their proposal were exactly equal to those of the best of the competing proposals. We agree with the superior court in finding that creation of a constitutional cause of action in appellants' favor "would

subject public agencies to endless lawsuits by disappointed bidders." We think these considerations constitute "special factors counselling hesitation" which render the *Bivens* doctrine inapplicable.[5] *See Bivens, id.*

Appellants do not present any separate argument under Alaska Const. Art. I, § 7, but, presumably, rely on its provisions as an alternative to the protection provided by the Fourteenth Amendment's due process clause. We are not persuaded that the Alaska Constitution provides any broader basis for relief in this context than does the United States Constitution.

■ Appellants offer two arguments based on principles of contract law. We find merit in the contention that an agency, in soliciting bids, implicitly contracts to give those bids fair and honest consideration. Because we conclude that such a contract was formed on the facts of this case, we need not reach appellants' alternative argument, which is based on the doctrine of promissory estoppel.[6]

■ It is established that in Alaska, as elsewhere, an agency's solicitation of bids is not an offer, but rather a request for offers; no contractual rights based on the content of a bid arise prior to its acceptance by the agency. *Beirne v. Alaska State Housing Authority*, 454 P.2d 262, 264 (Alas-

ka 1969). This principle was recognized by the Court of Claims in *Heyer Products Company, Inc. v. United States*, 140 F.Supp. 409, 412 (Ct.Cl.1956):

> The advertisement for bids was, of course, a request for offers to supply the things the Ordnance Department wanted. It could accept or reject an offer as it pleased, and no contract resulted until an offer was accepted. Hence, an unsuccessful bidder cannot recover the profit he would have made out of the contract, because he had no contract.

But the *Heyer* court went on to note:

> It was an implied condition of the request for offers that each of them would be honestly considered, and that that offer which in the honest opinion of the contracting officer was most advantageous to the Government would be accepted. No person would have bid at all if he had known that 'the cards were stacked against him.' No bidder would have put out $7,000 in preparing its bid, as plaintiff says it did, if it had known the Ordnance Department had already determined to give the contract to the Weidenhoff Company. It would not have put in a bid unless it thought it was to be honestly considered. It had a right to think it would be. The Ordnance Department impliedly promised plaintiff it

---

5. We also note our agreement with the Fifth Circuit's response to an attempt to base a claim for relief directly on the Fourteenth Amendment:

    Although there have been a few notable exceptions, *see, e. g., Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the federal courts ... have been hesitant to find causes of action arising directly from the Constitution. Our reluctance stems from many concerns, not the least of which is our awareness that the framers of the Constitution saw fit to entrust the job of legislating to the Congress.

    *Hearth, Inc. v. Department of Public Welfare*, 612 F.2d 981, 982 (5th Cir. 1980). The Fifth Circuit noted in that case that *Bivens* and *Passman* presented instances of flagrant violations of constitutional rights where no alternative remedies were available, while in *Hearth*, as here, an alternative remedy was available.

6. A promissory estoppel analysis was relied on by the California Court of Appeals in *Swinerton & Walberg Co. v. City of Inglewood—Los Angeles County Civic Center Authority*, 40 Cal. App.3d 98, 114 Cal.Rptr. 834, 837–39 (Cal.App. 1974). The *Swinerton* approach is of questionable validity in that a promissory estoppel claim must generally be based on an actual promise rather than one found by implication, *State v. First National Bank of Ketchikan*, 629 P.2d 78, 81 (Alaska 1981); 1A A. Corbin, Corbin on Contracts § 200, at 218 (1963). We note, however, that a promise binding under Restatement of Contracts, § 90 (1932) is a contract, Restatement (Second) of Contracts § 90, Comment e (Tent. Draft No. 2, 1965); and that § 90 merely presents an alternative rationale for the enforcement of a promise, 1A A. Corbin, Corbin on Contracts § 193 (1963). Having found ASHA's implied promise enforceable on other grounds, we need not consider the merits of this approach.

would be. This is what induced it to spend its money to prepare its bid.

The OTAC knew it would involve considerable expense to prepare models, photographs, diagrams and specifications and other things necessary to comply with the invitation, and so, when it invited plaintiff to incur this expense, it must necessarily be implied that it promised to give fair and impartial consideration to its bid, having in mind only the interest of the Government and not the interest of some favorite bidder.

That promise was broken, shamefully broken, if plaintiff's petition states the facts. If the facts there stated are true, the conclusion seems inescapable that the Ordnance Department knew from the beginning they were going to give Weidenhoff the contract. The advertisement for bids was a sham, done only to appear to comply with the law, to clothe their apparently dishonest purpose with the habiliments of legality. If these allegations are true, they practiced a fraud on plaintiff and on all other innocent bidders. They induced them to spend their money to prepare their bids on the false representation that their bids would be honestly considered.

This implied contract has been broken, and plaintiff may maintain an action for damages for its breach.

*Id.* at 412–13. This analysis has been relied upon in several cases brought before the United States Court of Claims. *See McCarty Corporation v. United States*, 499 F.2d 633, 637 (Ct.Cl.1974); *Continental Business Enterprises, Inc. v. United States*, 452 F.2d 1016, 1019 (Ct.Ct.1971); *Keco Industries, Inc. v. United States*, 428 F.2d 1233, 1237 (Ct.Cl.1970). It has also been adopted by the Ninth Circuit. *Armstrong & Armstrong, Inc. v. United States*, 514 F.2d 402, 403 (9th Cir. 1975).

ASHA urges that the *Heyer* rule should not be adopted in Alaska, primarily on the ground that it "would establish an unreasonable and unfounded disparity between the law of public and private contracts." Although it is quite true that it would not be feasible to imply a promise to consider all bids fairly and honestly on the part of a private party soliciting bids, we believe that such a distinction operates in favor of adoption of the *Heyer* rule. Private parties who solicit contractors' bids do not act under a duty, as do public entities, to select the bid most consistent with the public interest. *See* AS 18.55.540(b). We disagree with ASHA's characterization of the *Heyer* rule as a "judicial invention" under which public and private contractors receive disparate treatment; we think the rule is, rather, a consistent application of traditional contract principles to two essentially different situations. The rule recognizes that a promise of honest and fair consideration of bids can reasonably be implied in the public contract context, whereas such a promise cannot be implied in the private sphere.

ASHA argues, also, that the *Heyer* rule is inapplicable to the present case in that it has been restricted to "contracts involving procurement and for competitive bidding." In support of its argument, ASHA cites a case which refused to extend that rule to cover a disappointed applicant for federal loan guarantee assistance, *Tree Farm Development Corporation v. United States*, 585 F.2d 493 (Ct.Cl.1978). In refusing to broaden the *Heyer* doctrine, the Court of Claims noted that "*Heyer*, even as clarified by *Keco Industries*, has not been extended beyond the disappointed bidder fact pattern." *Id.* at 499. Inasmuch as the present case falls squarely within "the disappointed bidder fact pattern," *Tree Farm Development* is inapplicable. This argument against the application of *Heyer* to the present case is without merit.

Finally, ASHA raises the question of the level of culpability on the part of a government agency considering contractors' bids that is necessary to support recovery by a disappointed bidder. Although the *Heyer* court relied on what it considered to be fraudulent behavior on the part of the agency involved, *Heyer Products Company, Inc. v. United States*, 140 F.Supp. 409, 414 (Ct.Cl.1956), the standard consistently relied on by the Court of Claims has been that a

showing of "arbitrary and capricious" behavior by a government agency is sufficient to support a claim for bid preparation costs. *See, e. g., McCarty Corporation v. United States*, 499 F.2d 633, 638 (Ct.Cl.1974); *Keco Industries, Inc. v. United States*, 428 F.2d 1233, 1240 (Ct.Cl.1970). It has been emphasized that "the standard of proof to be applied in cases where arbitrary and capricious action is charged should be a high one." *Keco*, 428 F.2d at 1240.[7]

■■■ We agree with the Court of Claims' analysis of this situation, and adopt the rule that court has developed on the basis of the *Heyer* case. We hold that in exchange for a bidder's investment of the time and resources involved in bid preparation, a government agency must be held to an implied promise to consider bids honestly and fairly. Breach of this implied contract on the part of an agency entitles a disappointed bidder to recover the costs incurred in preparation of the bid.[8] We also hold, in accordance with the Court of Claims decisions, that the "reasonable basis" standard for review of administrative decisions, *see Jager v. State*, 537 P.2d 1100, 1107–08

(Alaska 1975); *Kelly v. Zamarello*, 486 P.2d 906, 916–17 (Alaska 1971), is applicable in this situation. *See Keco Industries, Inc. v. United States*, 492 F.2d 1200, 1203–04 (Ct. Cl.1974). Because we agree with the contention that there is no reasonable basis for an administrative decision based on a numerical analysis where the numerical result is produced by an arithmetical error, we conclude that appellants have made out a prima facie case for recovery under the *Heyer* rule. If, on remand, the facts are determined to be as alleged in this appeal, appellants are entitled to recover the expenses incurred in preparing their bid.

Appellants also contend that the City Council's rejection of the Johnston proposal was in some way binding on ASHA. The Slum Clearance and Redevelopment Act, AS 18.55.480–.960, pursuant to which ASHA took the actions which resulted in this litigation, requires ASHA to give notice of its decision to the governing body of the affected municipality at least thirty days prior to acceptance of any redevelopment contract proposal.[9] Appellants argue that

---

7. In a subsequent appeal of the same case, *Keco Industries, Inc. v. United States*, 492 F.2d 1200, 1203–04 (Ct.Cl.1974), the Court of Claims stated:

> The ultimate standard is, as we said in *Keco Industries I, supra*, whether the government's conduct was arbitrary and capricious toward the bidder-claimant. We have likewise marked out four subsidiary, but nonetheless general, criteria controlling all or some of these claims. One is that subjective bad faith on the part of the procuring officials, depriving a bidder of the fair and honest consideration of his proposal, normally warrants recovery of bid preparation costs. *Heyer Products Co. v. United States*, 140 F.Supp. 409, 135 Ct.Cl. 63 (1956). A second is that proof that there was 'no reasonable basis' for the administrative decision will also suffice, at least in many situations. *Continental Business Enterprises v. United States*, 452 F.2d 1016, 1021, 196 Ct.Cl. 627, 637–38 (1971). The third is that the degree of proof of error necessary for recovery is ordinarily related to the amount of discretion entrusted to the procurement officials by applicable statutes and regulations. *Continental Business Enterprises v. United States, supra*, 428 F.2d at 1240, 192 Ct.Cl. at 784. The fourth is that proven violation of pertinent statutes or regulations can, but need not necessarily, be

a ground for recovery. *Cf. Keco Industries I, supra*, 428 F.2d at 1240, 192 Ct.Cl. 784. The application of these four general principles may well depend on (1) the type of error or dereliction committed by the Government, and (2) whether the error or dereliction occurred with respect to the claimant's own bid or that of a competitor.

8. The lost profits appellants seek to recover cannot be awarded on this theory, since the contract under which they expected to make those profits never came into existence. Also, there is no assurance that appellants would have been awarded the contract even if their proposal had received the fair and honest consideration to which it was entitled. *See McCarty Corp. v. United States*, 499 F.2d 633, 637 (Ct.Cl.1974); *Keco Industries, Inc. v. United States*, 428 F.2d 1233, 1240 (Ct.Cl.1970).

9. AS 18.55.540(b) provides, in pertinent part:

> The authority may accept the redevelopment contract proposal it considers in the public interest and in furtherance of the purposes of §§ 480–960 of this chapter, provided that the authority has given to the governing body at least 30 days' written notice of its intent to accept the redevelopment contract proposal. Thereafter the authority may execute a redevelopment contract in accordance with the

this requires that ASHA obey, or "at least consider," a negative response on the part of the City Council to its selection. Although they concede that timely notice according to the terms of the statute of Johnston's selection was given to the Anchorage City Council, appellants cite the deposition testimony of a Mr. Johnson, who was an ASHA board member at the time this project was considered, which indicates that ASHA was not aware of the City Council's rejection of its selection at the time it awarded the contract to Johnston.

The only authority cited by appellants in support of this argument is the rule of statutory construction that "when possible, effect should be given to all provisions of a statute so that no part of the statute is superfluous." *See Libby v. City of Dillingham*, 612 P.2d 33, 39 (Alaska 1980); 2A C. Sands, *Sutherland Statutory Construction* § 46.06 (4th ed. 1973). They argue that:

> To conclude that the ASHA board could completely disregard and/or be completely unaware of the city council's rejection of the Johnston proposal makes the notice requirements of Section 540(d) meaningless and superfluous. Surely the legislature could not have intended this result.

■ It is not, as appellants apparently argue, necessary to read the statute as granting city councils veto power over ASHA decisions in order to prevent the notice provision from being "meaningless and superfluous." As ASHA points out, the provision may be read quite reasonably as simply allowing the City Council the opportunity to comment upon ASHA's selection of a redevelopment proposal. We see no reason to imply a veto power on behalf of city councils on the basis of the notice provision contained in AS 18.55.540(b), and accordingly find this argument to be without merit.

Finally, appellants are of the view that ASHA can be held liable in tort for its allegedly negligent consideration of their redevelopment proposal. They have, how-

ever, made no attempt to establish a prima facie negligence case. No authority is cited to establish that a duty of due care is owed by an offeree in considering an offer to enter a contract; the duty relied upon by appellants is apparently the duty of performance of the implied promise found in the *Heyer* line of cases. Appellants have, in our view, presented no argument upon which a negligence case could be based, and we accordingly reject this contention as meritless.

Since we have rejected the claims appellants have asserted on the basis of tort law and the United States and Alaska Constitutions, we need not reach ASHA's contention that those claims are barred by sovereign immunity. Additionally, since we have concluded that yet another remand of this case is necessary, we need not consider appellants' contention that excessive attorney's fees were awarded to ASHA. The judgment of the superior court is AFFIRMED in part, and REVERSED in part; and the matter is REMANDED for proceedings consistent with the views expressed herein.

BURKE, J., not participating.

---

provisions of (a) of this section and deliver deeds, leases and other instruments and take

all steps necessary to effectuate the redevelopment contract.