STATE of Alaska, DEPARTMENT OF EDUCATION, Appellant,

v.

Sheila NICKERSON and University Within Walls—Alaska, Inc., Appellees.

No. S-720.

Supreme Court of Alaska.

Dec. 27, 1985.

Larry A. McKinstry, Asst. Atty. Gen., Juneau, Norman C. Gorsuch, Atty. Gen., Juneau, for appellant.

Patrick E. Murphy, Batchelor, Murphy & Brinkman, Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

### I. FACTS AND PROCEEDINGS BELOW

In 1983, two state agencies, the Department of Education (DOE) and the Adult Corrections Agency, joined in an effort to provide educational programs to prisoners in various state correctional facilities. DOE issued a request for proposals (RFP) on July 5, 1983, which invited interested persons to submit proposals for the provision of education programs within each facility. Those interested were required to submit proposals no later than August 8, 1983. Educational services were to commence by September 5, 1983.

The RFP was amended three times before the August 8th deadline. The first amendment, issued on July 26, added vocational education to the required programs. It also set out the funding priority of the programs: first to adult basic education, second to vocational education, and third to postsecondary education. The July 26 amendment also assigned priorities among the correctional institutions which could receive postsecondary educational programs.

The second amendment, sent out on July 29, contained information concerning the educational testing policy of the Adult Corrections Agency and established prerequisites for an inmate's participation in postsecondary courses.

The last amendment was sent on August 2. It retracted the last part of the first amendment, thus removing the ranking of institutions which could maintain postsecondary education programs.

University Within Walls, Inc. (UWW), submitted a proposal in response to the RFP. UWW's proposal was for a statewide program; instead of offering services to one or two institutions, UWW undertook to serve all thirteen. A number of proposals were submitted by others.

UWW was informed that its proposal was not selected. It appealed this decision to the Commissioner of the DOE who found UWW's claims to be "insufficient to grant a hearing" and denied the appeal. UWW appealed to the superior court and requested a preliminary injunction to stop the awarding of contracts and to start anew the RFP process. The superior court enjoined further execution of the contracts awarded under the RFP and awarded UWW its bid preparation costs, subject to a possible set-off for costs saved by UWW in bidding again on a second RFP. There was a second RFP but UWW did not submit a proposal in response to it. UWW was awarded bid preparation costs of $19,200.

The superior court's decision of March 13, 1984, which was announced orally and occupies some fifty-two pages of the transcript, was based on the following grounds: (1) the first amendment to the RFP violated AS 36.98.040(a),[1] since the amendment substantially changed the RFP and was not accompanied by a change in scoring; (2) the second amendment to the RFP violated the thirty day notice requirement of AS 36.98.030[2] "read in conjunction with AS 36.98.040"; (3) DOE abused its discretion

in refusing to give UWW a hearing, since most of the findings of the review team which evaluated UWW's proposal were "unsupported by the evidence"; (4) evaluation of the proposal for its educational merits by Adult Corrections Agency personnel as well as the Department of Education violated AS 36.98.040, since the RFP stated that corrections employees would review proposals solely on security rather than educational grounds.

The state argued that UWW was not qualified to submit a proposal because it was not licensed under AS 14.48, which provides for the regulation of postsecondary institutions. The superior court found that UWW was not subject to AS 14.48 because under its proposal it did not offer instruction, but was to act as a broker between inmates and educational institutions. Further, the court found that the state had waived any requirement of compliance with AS 14.48 because two of the successful offerors were not licensed under AS 14.48.

## II. LICENSING REQUIREMENT

■ The state's first point on appeal is that the court erred concerning application of AS 14.48. We find no error. First, it does not appear that DOE intended compliance with AS 14.48 to be a prerequisite to bidding. The request for proposals stated as follows concerning eligibility:

> Bidder Eligibility. All agencies and individuals familiar with corrections education services and licensed to do business in Alaska are eligible to bid on this RFP.

1. AS 36.98.040(a) provides:
   After the responses are submitted, the state agency shall evaluate them. The evaluation shall consist of assigning point values to factors considered by the agency in evaluating each proposal. Each proposal received must be evaluated using the same factors as those set out in the request for proposal.

2. AS 36.98.030(a) provides in relevant part:
   When a state agency proposes to enter into a contract for professional services, the agency shall give public notice soliciting proposals

for the professional services contract by publication at least three times in one or more newspapers in general circulation in the state and, when appropriate, in a newspaper in local circulation where the work is to be performed. The first notice shall be published not less than thirty days before the date on which the agency expects to enter into the contract and each subsequent notice shall be published at intervals of no more than three days thereafter.

UWW was licensed to do business in the state as it was the holder of an Alaska business license. AS 43.70.020.

Assuming the request for proposals did require contractors' compliance with AS 14.48, UWW did not violate that chapter. Section 14.48.020(1) requires authorization by the Commission on Postsecondary Education before a person may operate a postsecondary educational institution in Alaska.[3] UWW did not propose that it would operate a postsecondary educational institution. Its proposal states:

> UWW will act as a broker or facilitator for inmates to obtain transferable college credit and in certain cases, undergraduate degrees. Earning college credit enhances employment opportunities and contributes to students' feelings of accomplishment and self-esteem. UWW is not a degree-awarding entity but acts as a liaison with nationally recognized external degree programs and testing programs to provide opportunities for earning college credit, such as the SUNY Regents Program, Thomas Edison College, and CLEP.

The state argues, however, that UWW was acting as an agent for postsecondary educational institutions and, as such, was required to be licensed under AS 14.48.020 and .080.[4] There is no evidence that UWW was an "agent" as defined by AS 14.48.-210(1):

> (1) "[A]gent" or "agents" mean persons owning an interest in, employed by, or representing for remuneration, a postsecondary educational institution in or outside the state who, by solicitation made in the state, enroll or seek to enroll students of the state for education offered by the institution, or offer to award educational credentials for remuneration, on behalf of the institution, or who hold themselves out to residents of the state as representing a postsecondary educational institution for any purpose....

Nothing in the record indicates that UWW owned an interest in, was employed by, or was going to represent for remuneration, any of the institutions which under its proposal would be providing instruction to state prisoners.

■ Finally, even if it were assumed that UWW was required to be licensed under AS 14.48, DOE could not fairly use this as a basis for rejecting UWW's proposal. Two of the successful bidders also were not licensed by the Postsecondary Education Commission at the time they contracted with the state. Like UWW, these bidders proposed to broker postsecondary educational courses. It would be manifestly arbitrary to reject only UWW's proposal based on the lack of a license when other successful bidders were guilty of the same failing.

### III. SCORING CRITERIA

■ Next, the state argues that the trial court erred in concluding that DOE's failure to change its scoring criteria to conform to the first amendment to the RFP violated AS 36.98.040(a).[5] Citing *Kelly v. Zamarello*, 486 P.2d 906, 917 n. 34 (Alaska

---

**3.** AS 14.48.020(1) provides: "No person may (1) operate a postsecondary educational institution in the state unless the institution has a valid authorization to operate issued under this chapter or is exempt from the provisions of this chapter...."

**4.** AS 14.48.020(2) provides:

No person may
....
(2) offer itself or through an agent enrollment or instruction in, or the granting of educational credentials from, a post-secondary educational institution, whether the institution is in or outside the state, unless the agent is a natural person and has a currently valid agent's permit issued under this chapter

or is exempt from the provisions of this chapter....

AS 14.48.080(a) provides in relevant part: A person desiring to solicit or perform the services of an agent, in this state, shall apply to the commission upon forms provided by the commission. The application shall be accompanied by evidence of the good reputation and character of the applicant and shall state the institution which the applicant intends to represent. An agent representing more than one institution must obtain a separate agent's permit for each institution represented.

**5.** This section is set out at footnote 1, *supra*.

1971), the state claims that "establishment of evaluation criteria and the relative weighting of each criterion is a matter left to the discretion of the agency which, if supported by a reasonable basis, should be upheld on review." This issue does not involve a challenge to particular evaluation criteria or the weight given to them. Rather, it involves claimed violation of a statute requiring the state to follow the evaluation criteria published in its RFP. Whether the statute is applicable to significant changes in the RFP is a matter of statutory interpretation. It is not a "matter left to the discretion of the agency," nor in cases such as this do we look for some reasonable basis for the agency's action. *See State, Department of Administration v. Bowers Office Products, Inc.*, 621 P.2d 11, 13 n. 4 (Alaska 1980).

The trial court read section .040 as requiring that each important factor expressed in the RFP be evaluated. The court found that the amendment significantly changed the RFP by adding vocational education and giving it a second priority among the educational programs to be offered. In holding that section .040 required evaluation of the vocational education component the court stated:

> [T]he point of the law is to set up a system in which bidders know in advance what they have to do to satisfy the raters and how they are going to be graded and, if shortly before the time for the submission of bids, that system is changed in a major way causing massive re-writes and massive dislocation, and some bidders do that and some do not ... and no change in the scoring system is made, obviously the bidders who go through that process are disadvantaged as to the other bidders because they have wasted a substantial amount of what everyone agreed was very precious time.

"[P]ublic policy requires carefully drawn public competitive bidding standards and strict compliance with those standards." *Kelly*, 486 P.2d at 918; *Bowers Office Products*, 621 P.2d at 13; *Alaska International Construction, Inc. v. Earth Mov-*

*ers*, 697 P.2d 626, 631 (Alaska 1985). Section 36.98.040 is reflective of that policy. DOE recognized that the amendment adding vocational education and giving it a high priority was a major one, yet DOE did not change the evaluation system in response to the amendment. We agree with the trial court that once vocational education became part of the RFP, section .040 required that it be recognized in the evaluation process.

## IV. REMEDIAL ISSUES

Because we agree with the superior court that there was an unexcused violation of AS 36.98.040, it is unnecessary to review the other grounds of the court's decision invalidating the contracts awarded under the RFP. There remain, however, questions concerning the remedy imposed by the court.

■ The state contends that the award of $19,200 in bid preparation costs was erroneous as a matter of law. It argues that there has been no finding of subjective bad faith on the part of the agency or that the awards lacked a reasonable basis, and that it is only the unfairness or dishonesty in evaluating a proposal that is compensable, not merely the fact that the procurement procedure was found to be illegal.

In *King v. Alaska State Housing Authority*, 633 P.2d 256 (Alaska 1981), we held that when soliciting bids an agency impliedly contracts to give those bids fair and honest consideration. "Breach of this implied contract on the part of an agency entitles a disappointed bidder to recover the costs incurred in preparation of the bid." *Id.* at 263 (footnote omitted). We held that this obligation was breached when the government's conduct was arbitrary and capricious toward the bidder-claimant. *Id.* at 262–63. We noted that a violation of a pertinent statute can be a ground for recovery, depending on, among other things, whether "the derelictions occurred with respect to the claimant's own bid or that of a competitor." *Id.* at footnote 7, *citing Keco Industries, Inc. v. United States*, 492 F.2d 1200, 1203–04 (Ct.

Cl.1974). Here the legal error affected the evaluation of UWW's proposal rather than just the proposals which were accepted. Awarding UWW bid preparation costs therefore is in accordance with our decision in *King*.[6]

The state also attacks the award of bid preparation costs on factual grounds. The state contends that UWW failed to prove with sufficient particularity damages resulting from the illegal procedure and that it was entitled to an equitable set-off because of bad faith on the part of UWW. The trial court's findings on these points are not clearly erroneous, and thus may not be disturbed on appeal. Alaska Rule of Civil Procedure 52(a).

## V. COSTS

 The only remaining issue concerns the award of costs to the appellees. The state argues that the costs should be limited to those costs specifically listed in Appellate Rule 508(d).[7] In addition to such costs, the court awarded certain deposition, copying, and long distance telephone costs, stating: "This case partakes of aspects both of an appeal and of litigation under the civil rules.... Given the "hybrid" nature of the action, appellants are entitled ... to recover costs of depositions."

The costs included in Appellate Rule 508(d) are not meant to preclude the trial court's exercise of its sound discretion in awarding additional costs in a particular case. The court was entitled to consider the fact that this administrative appeal did resemble a civil action. No prior administrative hearing was provided. *Cf. Rosen v. State Board of Public Accountancy*, 689 P.2d 478, 482–83 (Alaska 1984) (in award-

ing attorney's fees under Appellate Rule 508(e), the trial court may consider the nature of the judicial review and the extent of prior administrative proceedings). In this case, a cost award limited to the items specified in Rule 508(d) could reasonably be regarded as inadequate. We cannot say the trial court abused its discretion in making its award.

The judgment is AFFIRMED.

---

**6.** On appeal, the state cites *Morgan Business Associates v. United States*, 619 F.2d 892 (Ct.Cl. 1980) for the proposition that the bidder may recover its bid preparation costs only if it is established that its proposal was within the zone of active consideration. We express no opinion on this point as it was not raised before the trial court and thus is not properly before us. *Williams v. Alyeska Pipeline Service Co.*, 650 P.2d 343, 351 (Alaska 1982).

**7.** Appellate Rule 508(d) states:

When costs are awarded in the appellate court, they shall include, unless the court otherwise orders, the filing fee, the costs of preparing the record and transcript, premiums for any bond under Rule 204(c) or 204(d), and the cost of duplicating and mailing briefs. Costs for duplicating briefs will not be awarded in excess of the rate generally charged by printers in the city in which counsel is located.